IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Jose Luis Millan-Camacho,<br><br>                 Petitioner,<br><br>v.<br><br>Charles L. Ryan, et al.,<br><br>                 Respondents. | No. CV-15-08031-PCT-SRB (BSB)<br><br>**REPORT AND RECOMMENDATION** |

On March 11, 2015, Petitioner Jose Luis Millan-Camacho filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. (Doc. 1.) On August 18, 2015, Respondents filed an answer, in which they argue that federal habeas corpus review of Petitioner's claims is procedurally barred and, alternatively, his claims lacks merit. (Doc. 14.) Petitioner has not filed a reply and the time to do so has passed. (Doc. 6.) As discussed below, the Court recommends that the Petition be denied.

**I.   Factual and Procedural Background**

      **A.   Charges, Plea, and Sentencing**

In July 2013, the State of Arizona charged Petitioner with sale or transportation of a dangerous drug (methamphetamine), a class two felony (Count One), possession or use of drug paraphernalia, a class six felony (Count Two), use of wire or electronic communication in a drug-related transaction, a class four felony (Count Three), forgery, a

class four felony (Count Four), and taking the identity of another, a class four felony (Count Five).[1] (Doc. 14, Ex. A.)

On February 26, 2014, the trial court in the Yavapai County Superior Court conducted a settlement conference. (Doc. 14, Ex. B.) With the assistance of a Spanish-speaking interpreter, the parties discussed the State's plea offer, then recessed for approximately twenty-five minutes "to allow counsel to discuss the plea offer with [Petitioner]." (*Id.*) When court reconvened, the case proceeded to a change-of-plea hearing. (Doc. 14, Exs. B, C.) Petitioner entered a plea agreement and pleaded guilty to Counts One and Five. (Doc. 14, Ex. D.) The plea agreement stated that "a flat time sentence" would be imposed on Count One because the offense involved methamphetamine. (Doc. 14, Ex. C at 1-2.); *see* Ariz. Rev. Stat. § 13-3407(E) (setting forth minimum, presumptive, and maximum sentences in "calendar years" for offenses involving methamphetamine). In exchange for Petitioner's guilty plea, the State dismissed Counts Two, Three, and Four. (Doc. 14, Ex. D at 4.) Petitioner signed the plea agreement. Defense counsel also signed the agreement, confirming he had "discussed this case with [his] client in detail" and "believe[d] that the plea and disposition" were "appropriate under the facts of this case." (*Id.* at 5–6.)

Before accepting Petitioner's plea, the trial court confirmed with Petitioner that the interpreter "had a chance to read the[] plea agreement[] to [Petitioner] in Spanish," and that Petitioner's attorney explained the terms of the plea agreement to him through the interpreter. (Doc. 14, Ex. F at 4.) The trial court also confirmed that Petitioner had initialed each page of the plea agreement and confirmed that Petitioner's initials indicated that the interpreter had read the plea agreement to Petitioner and that he understood each page of the agreement. (*Id.* at 6.) The court explained the rights Petitioner was waiving by pleading guilty, including his right to directly appeal to the Arizona Court of Appeals. (*Id.* at 6-7.)

---

[1] The case was originally filed in the Justice Court of Mayer Precinct, Yavapai County. (Doc. 14, Ex. A.) The case was later transferred to the Yavapai County Superior Court. *See* http://apps.superme court.az.gov/publicaccess/caselookup.aspx.

The trial court further explained that a guilty plea on Count One would result in a "day-for-day or flat-time sentence" between five and fifteen years' imprisonment. (*Id.* at 9.) When asked if he understood what that meant, Petitioner answered, "Not very well; not that part." (*Id.*) The court explained that Arizona law required a prison sentence for a conviction for the transportation of dangerous drugs for sale. (*Id.*) The court also explained that the presumptive sentence was ten years' imprisonment, and the court could reduce that term to five years' imprisonment "but no lower." (*Id.*) With that additional explanation, Petitioner stated that he understood the sentence. (*Id.* at 9-10.)

After discussing restitution, the following discussion occurred:

> Q. I don't see any stipulations as to your sentence, but I told you [] I would impose the minimum sentence of five years flat-time in the department of corrections. . . . And, Mr. Camacho, I would run your [t]aking the [i]dentity [of another] concurrent; your total sentence would be five years flat. Is that your understanding as well?
>
> A. Yes. As long as it's both in the flat-time, yes.

(*Id.* at 11.)

When asked if he had any questions about the plea agreement, Petitioner answered, "No." (Doc. 14, Ex. F at 14.) The court found a sufficient factual basis for the guilty plea, accepted the plea, and proceeded to sentencing. (Doc. 14, Ex. F at 12-15; Exs. C, E.) The trial court asked Petitioner if he had anything to tell the court before sentencing, and Petitioner asked, "Are you going to count the time that I was here?" (Doc.14, Ex. F at 19.) The court responded, "Yes." (*Id.* at 20.) Petitioner replied, "Okay. That's fine." (*Id.*) The court then sentenced Petitioner on Counts One and Five as follows:

> It is the judgment of the Court that you be imprisoned with the Arizona Department of Corrections on the dangerous drug charge for five years. That's a flat-time sentence. That will begin from today's date. It's a minimum sentence, and I'll give you credit for 225 days served prior to today.
>
> On the taking the identity charge, again I find the mitigating factors outweigh any aggravating factors. It's the judgment of the Court that you be imprisoned with the Arizona Department of Corrections for a year and a half. That's a minimum sentence. That will begin from today's date, and I will give you credit for 225 days served prior to today. I do find it's

>appropriate, under all of the circumstances, that these sentences run concurrently, or at the same time with each other, for a total of five years.

(*Id.*)  The court advised Petitioner that he had the right to "petition for post-conviction relief" and stated, "[i]f you think that this Court has made any mistake and you want to petition for post-conviction relief, you must do that within 90 days of today or you lose that right." (*Id.* at 21.)  The Petition indicates that Petitioner did not initiate any post-conviction proceedings in state court (Doc. 1 at 2-5), and the Court confirmed this by reviewing the Yavapai County Superior Court's docket in *State of Arizona v. Jose Luis Camacho-Millan*, CR-201300766.

### B. Federal Petition for Writ of Habeas Corpus

On March 11, 2012, Petitioner filed a Petition raising two grounds for relief. (Doc. 1.)  In Ground One, Petitioner argues that trial counsel was ineffective because he permitted Petitioner to enter a plea agreement that provided for a sentence of five calendar years, "day-for-day," "flat time," but led Petitioner to believe he would only serve half of that sentence, or 2.5 years. (*Id.* at 6.)  Petitioner alleges he "didn't understand really what happen[ed]" and that the interpreter was inadequate. (*Id.*)  In Ground Two, Petitioner asserts that he would not have pled guilty if he had known that he was required to serve five years in prison as opposed to 2.5 years. (*Id.* at 7.)  He alleges that "all immigrants" serve only fifty percent of "th[eir] time in prison." (*Id.*)  Petitioner also argues that he "did not understand" that Rule 32 of the Arizona Rules of Criminal Procedure required him to file a petition within ninety days if he wanted to seek post-conviction relief. (*Id.*); *see* Ariz. R. Crim. P. 32.4(a) (requiring a defendant bringing a "Rule 32 of-right proceeding" to file a notice of post-conviction relief within ninety days after the entry of judgment and sentence).

Respondents assert that Petitioner's claims are procedurally defaulted and barred from federal habeas corpus view.  Alternatively, Respondents argue that Petitioner's claims lack merit.[2]  As discussed below, the Court concludes that Petitioner's claims are

---

[2] Respondents specifically state that Petitioner's claims "are not cognizable" on

- 4 -

procedurally barred from federal habeas corpus review and does not consider Respondents' alternative argument.

**II.     Exhaustion and Procedural Bar**

Ordinarily, a federal court may not grant a petition for writ of habeas corpus unless the petitioner has exhausted available state remedies.  28 U.S.C. § 2254(b).  To exhaust state remedies, a petitioner must afford the state courts the opportunity to rule upon the merits of his federal claims by "fairly presenting" them to the state's "highest" court in a procedurally appropriate manner.[3] *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) ("[t]o provide the State with the necessary 'opportunity,' the prisoner must 'fairly present' his claim in each appropriate state court . . . thereby alerting that court to the federal nature of the claim"); *Castille v. Peoples*, 489 U.S. 346, 349 (1989) (same).

A claim has been fairly presented if the petitioner has described both the operative facts and the federal legal theory on which his claim is based.  *See Baldwin*, 541 U.S. at 33.  A "state prisoner does not 'fairly present' a claim to a state court if that court must read beyond a petition or brief . . . that does not alert it to the presence of a federal claim in order to find material, such as a lower court opinion in the case, that does so."  *Id.* at 31-32.  Thus, "a petitioner fairly and fully presents a claim to the state court for purposes of satisfying the exhaustion requirement if he presents the claim: (1) to the proper forum . . . (2) through the proper vehicle, . . . and (3) by providing the proper factual and legal basis for the claim."  *Insyxiengmay v. Morgan*, 403 F.3d 657, 668 (9th Cir. 2005) (internal citations omitted).

---

federal habeas corpus review.  (Doc. 14 at 12.)  Cognizable ordinarily means "'[c]apable of being tried or examined before a designated tribunal; within [the] jurisdiction of [a] court or power given to [a] court to adjudicate [a] controversy.'"  *FDIC v. Meyer*, 501 U.S. 471, 476 (1994) (quoting Black's Law Dictionary 259 (6th ed. 1990)).  Review of Respondents' answer indicates that they are arguing that Petitioner's claims lack merit, not that his claims are not within the jurisdiction of this Court.  (*Id.* at 12-13.)

[3]   In Arizona, unless a prisoner has been sentenced to death, the "highest court" requirement is satisfied if the petitioner has presented his federal claim to the Arizona Court of Appeals either through the direct appeal process or post-conviction proceedings.  *Crowell v. Knowles*, 483 F. Supp. 2d 925, 931-33 (D. Ariz. 2007) (discussing *Swoopes v. Sublett*, 196 F.3d 1008, 1010 (9th Cir. 1999)).

The requirement that a petitioner exhaust available state court remedies promotes comity by ensuring that the state courts have the first opportunity to address alleged violations of a state prisoner's federal rights. *See Duncan v. Walker*, 533 U.S. 167, 178 (2001); *Coleman v. Thompson*, 501 U.S. 722, 731 (1991). Principles of comity also require federal courts to respect state procedural bars to review of a habeas petitioner's claims. *See Coleman*, 501 at 731-32. Pursuant to these principles, a habeas petitioner's claims may be precluded from federal review in two situations.

First, a claim may be procedurally defaulted and barred from federal habeas corpus review when a petitioner failed to present his federal claims to the state court, but returning to state court would be "futile" because the state court's procedural rules, such as waiver or preclusion, would bar consideration of the previously unraised claims. *See Teague v. Lane*, 489 U.S. 288, 297-99 (1989); *Beaty v. Stewart*, 303 F.3d 975, 987 (9th Cir. 2002). If no state remedies are currently available, a claim is technically exhausted, but procedurally defaulted. *Coleman*, 501 U.S. at 732, 735 n.1.

Second, a claim may be procedurally barred when a petitioner raised a claim in state court, but the state court found the claim barred on state procedural grounds. *See Beard v. Kindler*, 558 U.S. 53 (2009). "[A] habeas petitioner who has failed to meet the State's procedural requirements for presenting his federal claim has deprived the state courts of an opportunity to address those claims in the first instance." *Coleman*, 501 U.S. at 731-32. In this situation, federal habeas corpus review is precluded if the state court opinion relies "on a state-law ground that is both 'independent' of the merits of the federal claim and an 'adequate' basis for the court's decision." *Harris v. Reed*, 489 U.S. 255, 260 (1989).

A state procedural ruling is "independent" if the application of the bar does not depend on an antecedent ruling on the merits of the federal claim. *See Stewart v. Smith*, 536 U.S. 856, 860 (2002); *Ake v. Oklahoma*, 470 U.S. 68, 74-75 (1985). A state court's application of the procedural bar is "adequate" if it is "strictly or regularly followed." *See Wells v. Maass*, 28 F.3d 1005, 1010 (9th Cir. 1994). If the state court occasionally

excuses non-compliance with a procedural rule, that does not render its procedural bar inadequate. *See Dugger v. Adams*, 489 U.S. 401, 410-12 n.6 (1989). "The independent and adequate state ground doctrine ensures that the States' interest in correcting their own mistakes is respected in all federal habeas cases." *Coleman*, 501 U.S. at 732. Although a procedurally barred claim has been exhausted, as a matter of comity, the federal court will decline to consider the merits of that claim. *See id.* at 729-32.

However, because the doctrine of procedural default is based on comity, not jurisdiction, federal courts retain the power to consider the merits of procedurally defaulted claims. *See Reed v. Ross*, 468 U.S. 1, 9 (1984). Generally, a federal court will not review the merits of a procedurally defaulted claim unless a petitioner demonstrates "cause" for the failure to properly exhaust the claim in state court and "prejudice" from the alleged constitutional violation, or shows that a "fundamental miscarriage of justice" would result if the claim were not heard on the merits. *Coleman*, 501 U.S. at 750. Additionally, pursuant to 28 U.S.C. § 2254(b)(2), the court may dismiss plainly meritless claims regardless of whether the claim was properly exhausted in state court. *See Rhines v. Weber*, 544 U.S. 269, 277 (2005) (holding that a stay is inappropriate in federal court to allow claims to be raised in state court if they are subject to dismissal under § 2254(b)(2) as "plainly meritless").

**III.   Federal Review of Petitioner's Claims is Procedurally Barred**

As Petitioner concedes, he did not present any of his claims asserted in Grounds One and Two to the state trial or appellate courts. (Doc. 1 at 2-5, 7.) Petitioner's claims are technically exhausted and procedurally barred from federal habeas corpus review because it would be futile for Petitioner to return to the state courts to try to exhaust his claims. Specifically, Petitioner is time-barred from a filing a petition for post-conviction relief under Rule 32. *See* Ariz. R. Crim. P. 32.4(a); *McKinney v. Ryan*, 730 F.3d 903, 913 n.6 (9th Cir. 2013) (finding claims procedurally defaulted because petitioner was barred from exhausting his claims in the first instance by Rules 32.2(a)(3) and 32.4(a)).

Additionally, Petitioner's claims do not implicate any exceptions to the timeliness rules referred to in Rule 32.4(a) and Rule 32.2(b), including being held in custody after the imposed sentence expired, the presentation of newly discovered material facts that probably would have changed the verdict or sentence, the failure to file a timely notice of post-conviction relief or a notice of appeal that was not the defendant's fault, a change in the law, or the petitioner's actual innocence. *See* Rule 32.1(d), (e), (f), (g) and (h). Accordingly, federal habeas corpus review of Petitioner's claims is procedurally barred.

**IV.     Petitioner has not Established a Basis to Overcome the Procedural Bar**

Because Petitioner's claims are procedurally defaulted, federal habeas corpus review is unavailable unless Petitioner establishes "cause and prejudice" or a "fundamental miscarriage of justice" to overcome the procedural bar. *See Coleman*, 501 U.S. at 749. For the reasons below, the Court finds that Petitioner has not established a basis to overcome the procedural bar.

**A.     Cause and Prejudice**

A federal court may review the merits of a procedurally defaulted claim if a petitioner establishes "cause" and "prejudice." *Coleman*, 501 U.S. at 750. To establish "cause," a petitioner must establish that some objective factor external to the defense impeded his efforts to comply with the state's procedural rules. *Teague*, 489 U.S. at 298. A showing of "interference by officials," constitutionally ineffective assistance of counsel, or "that the factual or legal basis for a claim was not reasonably available" may constitute cause. *Murray v. Carrier*, 477 U.S. 478, 488 (1986).

"Prejudice" is actual harm resulting from the constitutional violation or error. *Magby v. Wawrzaszek*, 741 F.2d 240, 244 (9th Cir. 1984). To establish prejudice, a habeas petitioner bears the burden of demonstrating that the alleged constitutional violation "worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 170 (1982) (emphasis in original); *see Thomas v. Lewis*, 945 F.2d 1119, 1123 (9th Cir. 1991). If petitioner fails to establish cause for his procedural default, then the court need not

consider whether petitioner has shown actual prejudice resulting from the alleged constitutional violations. *Smith v. Murray*, 477 U.S. 527, 533 (1986).

Liberally construing the Petition, Petitioner argues to establish cause that he did not understand Rule 32 and the time limit for filing a petition for post-conviction relief. (Doc. 1 at 6, 7.)  He also asserts that he lacked legal knowledge or assistance.  (*Id.*) Petitioner's status as an inmate, lack of legal knowledge, and limited legal resources do not establish cause to excuse the procedural bar to review of his claims.  *See Hughes v. Idaho State Bd. of Corr.*, 800 F.2d 905, 909 (9th Cir. 1986) (an illiterate pro se petitioner's lack of legal assistance did not amount to cause to excuse a procedural default); *Tacho v. Martinez*, 862 F.2d 1376, 1381 (9th Cir. 1988) (petitioner's reliance upon jailhouse lawyers did not constitute cause); *see also Rasberry v. Garcia*, 448 F.3d 1150, 1154 (9th Cir. 2006) ( "a pro se petitioner's lack of legal sophistication is not, by itself, an extraordinary circumstance warranting equitable tolling").

Moreover, at the conclusion of sentencing, the trial court specifically advised Petitioner that he must file a "petition for post-conviction relief" within ninety days if he believed the court "made any mistake," and that if he failed to do so, he would "lose that right."  (Doc. 14, Ex. F at 21.)  Additionally, the record reflects that the trial court provided Petitioner with a notice of his rights on post-conviction review.  (Doc. 14, Ex. E; Ex. F at 21.)  Therefore, the Court concludes that Petitioner has not shown cause for the procedural default of his claims and does not consider whether Petitioner has shown prejudice.  *See Smith v. Murray*, 477 U.S. 527, 533 (1986).

### B.     Fundamental Miscarriage of Justice

A federal court may also review the merits of a procedurally defaulted claim if the petitioner demonstrates that failure to consider the merits of that claim will result in a "fundamental miscarriage of justice."  *Schlup v. Delo*, 513 U.S. 298, 327 (1995).  A "fundamental miscarriage of justice" occurs when "'a constitutional violation has probably resulted in the conviction of one who is actually innocent.'"  *Id.* (citing *Murray v. Carrier*, 477 U.S. 478, 496 (1986)).

To establish a fundamental miscarriage of justice, a petitioner must present "new reliable evidence — whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence — that was not presented at trial." *Schlup,* 513 U.S. at 324. The petitioner has the burden of demonstrating that "it is more likely than not that no reasonable juror would have convicted him in light of the new evidence." *Id.* at 327. Petitioner asserts that if the Court does not hear his case, he may not get justice. (Doc. 1 at 7.) However, Petitioner has not presented new evidence and has not shown that failure to consider his procedurally defaulted claims will result in a fundamental miscarriage of justice. Thus, he has not met *Schlup's* high standard and this exception does not excuse the procedural bar.

**V.     Conclusion**

As set forth above, federal habeas corpus review of Petitioner's claims is procedurally barred and Petitioner has not established a basis to overcome that bar. Accordingly, the Court recommends that the Petition be denied.

Accordingly,

**IT IS RECOMMENDED** that the Petition for Writ of Habeas Corpus (Doc. 1) be **DENIED**.

**IT IS FURTHER RECOMMENDED** that a Certificate of Appealability and leave to proceed in forma pauperis on appeal be **DENIED** because the dismissal of the Petition is justified by a plain procedural bar and reasonable jurists would not find the procedural ruling debatable.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Federal Rule of Appellate Procedure 4(a)(1), should not be filed until entry of the District Court's judgment. The parties have fourteen days from the date of service of a copy of this recommendation within which to file specific written objections with the Court. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6 and 72. The parties have fourteen days within which to file a response to the objections. Failure to file timely objections to the Magistrate Judge's

Report and Recommendation may result in the District Court's acceptance of the Report and Recommendation without further review.  *See United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003).  Failure to file timely objections to any factual determination of the Magistrate Judge may be considered a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to the Magistrate Judge's recommendation.  *See* Fed. R. Civ. P. 72.

Dated this 20th day of October, 2015.

Bridget S. Bade
United States Magistrate Judge